## LAWRENCE v. SCHAEFER.

### (Supreme Court, Trial Term, Erie County. January 4, 1897.)

1. CONTRACTS—RESTRICTING RIGHT TO SUE—UNDERWRITERS.
    A stipulation in a Lloyds insurance policy that no action "to enforce its provisions" shall be brought except against one of the underwriters, who is designated to represent all the others, and that they will abide by the result of such action, is valid, as its enforcement does not oust the courts of jurisdiction, but only prevents a multiplicity of suits, and the action provided for is against one of the parties to the contract, not a mere agent or attorney.

2. SAME—REMEDIES AGAINST UNDERWRITERS.
    Such a stipulation precludes separate actions on the policy against the several underwriters, but does not prevent proceedings against them to enforce a judgment obtained in the action prescribed.

**3. INSURANCE—ACTIONS ON POLICY—LIMITATION.**

A limitation in a Lloyds insurance policy that action thereon must be commenced within 12 months after loss refers only to the action to establish the claim, not to proceedings against the several underwriters to enforce a judgment.

**4. CONTRACTS—CONTRACTOR FOR UNDERWRITERS—SUIT AGAINST.**

An underwriter who makes a contract of insurance for himself and other underwriters is a trustee of an express trust, within Code Civ. Proc. § 449, which empowers such a trustee to sue without joining the real party in interest.

**5. PARTIES—REAL PERSON IN INTEREST—WHEN NOT NECESSARY.**

The provision of Code Civ. Proc. § 449, that the real party in interest need not be joined in actions by a trustee of an express trust, extends to actions against such a trustee.

Action by Thomas E. Lawrence against Gustave A. Schaefer on a Lloyds policy. Complaint dismissed.

George S. Hull and S. W. Petrie, for plaintiff.

A. J. Robertson, for defendant.

SPRING, J. This action was tried without a jury, and involves the question of the right of the insured in a Lloyds policy to sue each of the underwriters to recover for a loss within the terms of the policy. The policy in suit was issued by 25 underwriters, and is signed, not by them personally, but by C. Hagen, their attorney. By the terms of the policy, the personal liability of each underwriter is limited to $200 in the event of loss, and is individual and several. Then occur the following clauses, which comprise the nub of the controversy in this action: "No action shall be brought to enforce the provisions of this policy except against the attorney, and representing all the underwriters, and each of the underwriters hereby agrees to abide the result of any suit so brought, as fixing his individual responsibility hereunder." It is further provided that judgment shall be first satisfied out of the unexpended premiums in the hands of the underwriters, and, if necessary, "then out of the individual liability of the several underwriters as hereinbefore expressed and limited; but in no case shall the judgment bind the property of the said attorney to a greater extent than his liability as an individual underwriter." A loss occurred under the policy in question, and it has been adjusted, and 25 separate actions have been brought, one against each underwriter, and the attorney in fact, as such, has not been sued.

The primary question is as to the validity of the clause in the policy requiring the attorney to be sued as representing all the underwriters. The policy in controversy is a contract between the insured and the insurers, and its stipulations and agreements will be given full force and effect, unless they contravene some constitutional provision, or are repugnant to public policy. The purpose of the requirement was obviously to prevent a multiplicity of actions, and, in case there was a defense to be interposed, to have it fought out in one action. The aim or design is as important for the insured as for the underwriters. To compel the insured to begin 25 separate actions, each for a small sum, and against defendants widely scattered, and possibly in a justice's court, and with the privilege to the defendant to litigate the merits in each case, would impose

upon the insured an expensive and difficult mode of realizing for his loss, and with much uncertainty, for he might succeed in some cases, and be defeated in others; and the underwriters would likewise be subjected to the burden of a contest in each case with great liability as to costs. So the provision is a prudent and desirable one for all concerned, to have the merits of the controversy determined in one action. The enforcement of this provision does not oust the courts of jurisdiction. It simply is a stipulation on the part of all the underwriters with the assured that, in the event payment is not made conformably to the terms of the policy, the insured may bring an action against Hagen, one of the underwriters, and that action will be decisive in determining the plaintiff's right to recover. That infringes upon no constitutional provision. One fair trial on the merits before a jury can be had. So the plaintiff gets an adjudication, and the underwriters have their day in court. The attorney represents them as an executor or administrator represents the next of kin. The mode of ascertaining the rights of parties is often made the subject of stipulation. As was said in Re New York L. & W. R. Co., 98 N. Y. 447–453: "And generally, all stipulations made by parties for the government of their conduct, or the control of their rights, in the trial of a cause, or the conduct of a litigation, are enforced by the courts."

The counsel for defendant argues that there is no way of enforcing the judgment after one is recovered. Possibly, suit may be necessary, but the merits cannot be retried. The stipulation must be taken in toto, and by it the underwriters expressly agree to abide the result of any action brought against the attorney, so that another suit would simply be a step in the procedure to enforce judgment like proceedings supplemental to execution, or any other remedy designed to insure or aid in the collection of a judgment. In full liability corporations, resort must first be had to the corporate assets, and, in case of failure to realize out of these, then the members of the corporation become liable; but it has never been regarded in contravention of public policy that the creditor must first proceed against the body corporate.

Perhaps the more troublesome question is: Even assuming the insured can proceed against the attorney, does that restriction absolutely inhibit suing the individual underwriters in separate actions? If force is to be given to the restrictive clause at all, it must be with the intent of carrying out the design of the parties to the insurance contract. Their agreement is that no action shall be brought to enforce the provisions of the policy except against the attorney, and no casuistry can construe this stipulation into meaning that 25 actions can be brought to enforce the provisions of the policy. That was the very annoyance both parties were seeking to avoid, and, as its foundation lies in a purpose to adjust their rights in court without a multiplicity of actions, the courts should fairly endeavor to make effective this object. Of course, if the scheme designed that no redress could be had against the underwriters, that the action against the attorney ends any attempt, by legal proceeding, to en-

force the claim against the personal liability of the underwriters, then the provision would be nugatory and against public policy. It would then be a mere jumble of words to permit the underwriters to assume ostensibly a liability incapable of enforcement. But in construing this provision, as in every other, we must give a fair interpretation to the intent of the contracting parties. The scheme of insurance evidently contemplated there would be a general fund on hand to meet losses, and the personal liability of the underwriters was only to be available when the judgment could not be made out of the fund; so that it is again akin to the liability of stockholders of a full liability corporation. The underwriters contract to pay after their liability has been established in the manner provided, and after collection from the designated fund cannot be made. The inhibition against suing the underwriters is not absolutely unqualified, but "no action to enforce the provisions of the policy" is maintainable against the underwriters, for that must be against the attorney; that is, the merits of any controversy that may arise within the compass of the contract must be determined in that action, and the stipulation of the underwriters to abide thereby cuts off any further litigation as to the provisions of the policy, and thereafter whatever proceedings are carried on are merely with a view of collecting the judgment. The clause is reasonably susceptible to this construction, and it has the merit of fairly spelling out the purpose of the parties to it.

It seems to me that Hagen is not merely an agent or attorney in his contractual relations with the insured. He is one of the underwriters, and in this particular the case may be distinguishable from the celebrated case of Knorr v. Bates, 14 Misc. Rep. 501, 35 N. Y. Supp. 1060. He is the particular underwriter who is designated in the policy to bear the brunt of any litigation that may arise to enforce the provisions of the policy, and his ultimate liability is like that of his associates. These Lloyds policies have grown into extensive use recently, and clauses of like purport to the one here in controversy have been several times the subject of judicial construction, but, unfortunately, without unanimity of opinion. In Knorr v. Bates, 24 Civ. Proc. 377, 33 N. Y. Supp. 691, affirmed 14 Misc. Rep. 501, 35 N. Y. Supp. 1060, the clause was almost identical with the one in suit, and the only distinction seems to be that in that case the attorney was not an underwriter; and the reasoning both of the judge at special term and of Judge Pryor lays considerable stress upon the fact the attorney was not a party to the contract. In that case the clause was held to be invalid. This has been followed in the city court of New York. See Ralli v. Hillyer, 15 Misc. Rep. 692, 40 N. Y. Supp. 1148. And in the case of Farjeon v. Fogg, 16 Misc. Rep. 219, 37 N. Y. Supp. 980, Judge Truax, in the special term of the supreme court, decided a similar clause to be invalid, putting his conclusion squarely upon the ground that the stipulation required the action to be brought against a person not a party to the contract; and the provision was therefore void, as inimical to public policy. In Leiter v. Beecher, 2 App. Div. 577, 37 N. Y. Supp. 1114,

and in Concentrating Works v. Ackermann, 6 App. Div. 540, 39 N. Y. Supp. 585, the appellate division of the First department decided similar clauses to be valid, although an endeavor was made to distinguish those cases from Knorr v. Bates, supra.

The contention pressed by the counsel for the plaintiff that the 12-months limitation in which actions must be commenced would operate to prevent the insured recovering against the underwriters at all is not applicable to this case, as was well said in the case last cited. The limitation has reference solely to the action against the attorney in fact, and not to any proceeding to enforce an established judgment. Again, it occurs to me that Hagen is a trustee of an express trust, within the purview of section 449 of the Code of Civil Procedure. The contract was made with him, and, so far as the other underwriters are concerned, for their benefit. While that section, on its face, is in terms permissive, in allowing actions to be prosecuted, yet a similar provision of the Code was held to warrant suits to be maintained against the trustee. Mead v. Mitchell, 5 Abb. 92–106, affirmed 17 N. Y. 210. That is the general doctrine that an executor, administrator, or person expressly authorized by statute to sue can be prosecuted by action in pursuance of the same authority that accords him the privilege of invoking the aid of the courts.

The complaint must be dismissed, with costs.